1  Matthew I. Berger, State Bar Number 89078
   Robert M. Graham, State Bar Number 312085
2  MATTHEW I. BERGER LAW GROUP,
   A Professional Corporation
3  matthewb@mbergerlaw.com
   robert@mbergerlaw.com
4  10 E. Islay St.
   Santa Barbara, CA 93101-2423
5  (805) 456-1200 - voice
   (805) 770-5775 - facsimile
6
7  Attorneys for Defendants THE
   ESTATE OF THOMAS STEINBECK,
8  THE PALLADIN GROUP, INC., and
   GAIL KNIGHT STEINBECK
9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

13  **WAVERLY SCOTT KAFFAGA,**      )   Case Number: **14-CV-08699-TJH (FFM)**
    **AS EXECUTOR OF THE ESTATE**  )
14  **OF ELAINE ANDERSON**         )
    **STEINBECK,**                 )   **DEFENDANTS' OPPOSITION TO**
15                                 )   **PLAINTIFF'S MOTION FOR**
           **Plaintiff,**          )   **PERMANENT INJUNCTION AND**
16                                 )   **DECLARATORY JUDGMENT**
                                   )
17  **vs.**                        )
                                   )   Date:        December 18, 2017
18  **THOMAS STEINBECK, GAIL**     )   Time:        UNDER SUBMISSION
    **KNIGHT STEINBECK, and THE**  )   Courtroom:   9B
19  **PALLADIN GROUP, INC.,**      )                350 W. 1st Street,
                                   )                Los Angeles, CA 90012
20         **Defendants.**         )   Judge:       Terry J. Hatter, Jr.
                                   )
21  _____)

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   Equitable Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.   Declaratory Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   The Court Should Deny Plaintiff's Request For A Permanent
Injunction Because Plaintiff Failed To Satisfy The Four-Factor Test. 4

        1.   Plaintiff Has Not Suffered Irreparable Harm . . . . . . . . . . . . . . 4

        2.   Plaintiff Received Adequate Remedies at Law. . . . . . . . . . . . . . 6

        3.   Balancing the Hardships Harms the Defendants. Equitable Relief
is Unwarranted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        4.   Issuing Plaintiff's Requested Injunction Would Cause a Great
Disservice to the Public's Interest . . . . . . . . . . . . . . . . . . . . . . 10

    B.   Declaratory Judgment Is Unnecessary Because The Relevant Legal Issue
Has Already Been Clarified and Settled By This Court And The Jury's
Verdict. Declaratory Judgment Would Only Create Greater Uncertainty,
Insecurity, And Controversy Which Gave Rise To This Lawsuit . . . 13

IV.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

## **CASES**

4  *Amaco Production Co. v. Gambell,*

5      480 U.S. 531 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6  *Brillart v. Excess Ins. Co. Of Am.,*

7      316 U.S. 491 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8  *Century 21 Real Estate Corp. v. Sandlin,*

9      846 F.2d 1175 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10  *Columbia Pictures Industries, Inc. v. Fung,*

11      2013 WL 12098334 (C.D. Cal. Aug. 5, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 5

12  *eBay Inc. v. MercExchange, L.L.C.,*

13      547 U.S. 388 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 8, 10

14  *Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co. Of Reading, PA.,*

15      873 F.2d 229, 231 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . .   1, 3, 13, 14, 15

16  *Edelbrock LLC v. Genesis Group International (USA), Inc.,*

17      119 F.Supp.3d 1168 (C.D. Cal. Aug. 12, 2015) . . . . . . . . . . . . . . . . . . . . . . 3, 14

18  *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.,*

19      654 F.3d 989 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

20  *McGraw-Edson Co. v. Preformed Line Products Co.,*

21      362 F.2d 339 (9th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13

22  *MerExchange, L.L.C. v. eBay, Inc.,*

23      500 F.Supp.2d 556 (E.D. Vir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

24  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*

25      454 F.Supp.2d 966 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

26  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*

27      518 F.Supp.2d 1197 (C.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 7, 8, 9

28  *Perfect 10, Inc. v. Google, Inc.,*

653 F.3d 976 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 3

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,

    413 U.S. 376 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*SEC v. Murphy*,

    626 F.2d 633 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Tory v. Cochran.*,

    544 U.S. 734 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Valle Del Sol Inc. v. Whiting*,

    709 F.3d 808 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wienberger v. RomeroBarcelo*,

    456 U.S. 305 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**FEDERAL RULES**

Federal Rules of Appellate Procedure, Rule 4(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . 11, 12

**STATUTES**

28 U.S.C. § 2201(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## I.    INTRODUCTION

On November 1, 2016, the Court partially granted Plaintiff's summary judgment motion finding that Defendants Thomas Steinbeck ("Mr. Steinbeck"), Gail Steinbeck ("Ms. Steinbeck") and The Palladin Group ("Palladin") (collectively, the "Defendants") had breached the 1983 Agreement and slandered Plaintiff's title to the Steinbeck Works. Partial SJ Order, Dkt. No. 150, 14. The Court also partially denied Plaintiff's motion for summary judgment by denying Plaintiff's intentional interference with prospective economic advantage claim and request for declaratory judgment. *Id.* at 14. The Court stated the unresolved issues of termination before the Ninth Circuit gave the Court "pause" and declared ownership of unresolved intellectual property rights would lead to greater "uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* at 13; *citing Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co. Of Reading, P.A.*, 873 F.2d 229, 231 (9th Cir. 1989).

On September 5, 2017, the jury returned a verdict against Defendants for intentional interference with prospective economic advantage. Jury Verdict, Dkt. No. 295. The jury awarded Plaintiff $5,250,000 in compensatory damages and $7,900,000 in punitive damages for all three of Plaintiff's claims. *Id.*

After trial, bombarded by the media, Ms. Steinbeck voiced her frustration with the jury's verdict. Ms. Steinbeck did not attack the jury nor did she make any statements that would repeat the conduct that resulted in this litigation. Any comments made by Ms. Steinbeck regarding her right to appeal were seen as expressing an intent to exhaust Defendants' rightful legal remedies rather than declaring that she, or the other Defendants, controlled the Steinbeck Works or were going to slander Plaintiff's title to the Steinbeck Works. With the significant amount of press this litigation received, it is apparent the public has been unequivocally assured of the Court's determination over who controls the Steinbeck Works. The extensive media coverage has also restored Plaintiff's title to the Steinbeck Works.

1   There exists no evidence in the trial record or a quote in the media which shows
2   Defendants intend to try and control or slander Plaintiff's title to the Steinbeck Works.
3   Equitable relief is not only unnecessary, but unjust.

4   1. Defendants request that the Court deny Plaintiff's request for a permanent
5   injunction. Plaintiff has failed to prove the four-factor test required for issuance
6   of a permanent injunction set forth below. The scope of the requested permanent
7   injunction amounts to a *prior restraint* on Defendants' First Amendment right
8   to free speech.

9   2. Defendants request that the Court decline to issue declaratory judgment because
10   the relevant legal issue has already been clarified and settled by this Court in its
11   Partial SJ Order, Dkt. No. 150, and its Relitigation Order, Dkt. No. 270.

12   3. In light of the Court's rulings precluding the introduction of certain evidence,
13   Defendants did not have the opportunity to establish the factual underpinnings
14   that Plaintiff, by and through her agent, has continuously failed and refused to
15   fulfill its obligations to pay royalties derived from the Steinbeck Works to all
16   copyright holders, including Mr. Steinbeck. Accordingly and unfortunately,
17   Defendants no longer are able to seek an affirmative defense for unclean hands.

18   **II.  LEGAL STANDARD**

19   **A. Equitable Relief**

20   Equity demands that "a plaintiff seeking a permanent injunction must satisfy a four-
21   factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547
22   U.S. 388, 392 (2006). The plaintiff has the burden to prove:

23   (1) it suffered an irreparable injury;

24   (2) remedies available at law, such as monetary damages, are inadequate to
25   compensate for that injury;

26   (3) considering the balance of hardships between the plaintiff and defendant, a
27   remedy in equity is warranted; and

28   (4) the public interest would not be disserved by a permanent injunction.

1       *Id.*; *see, e.g., Wienberger v. RomeroBarcelo*, 456 U.S. 305, 311-312 (1982);

2  *Amaco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987).

3       The United States Supreme Court "has consistently rejected invitations to replace

4  traditional equitable considerations with a rule that *an injunction automatically follows a*

5  *determination that a copyright has been infringed.*" *Perfect 10, Inc. v. Google, Inc.*, 653

6  F.3d 976, 980 (9th Cir. 2011) (emphasis added); *quoting eBay*, 547 U.S. at 392-393.

7  Logically, even if a plaintiff is successful, it does not follow that she "is also likely to

8  suffer irreparable harm if an injunction does not issue," because such a presumption is

9  "inconsistent with the principles of equity set forth in *eBay*." *Id.*

10      "A plaintiff may not be granted injunctive relief until [s]he satisfies the four-factor

11  test . . . ." *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.,* 654 F.3d 989, 995 (9th Cir.

12  2011); *see, eBay,* 547 U.S. at 338.

13      A permanent injunction that precludes speech is considered a prior restraint on

14  speech in violation of the First Amendment. *Tory v. Cochran*, 544 U.S. 734, 738 (2005).

15  "Prior restraints on speech and publication are the most serious and least tolerable

16  infringement on First Amendment rights." *Pittsburgh Press Co. v. Pittsburgh Comm'n on*

17  *Human Relations*, 413 U.S. 376, 390 (1973).

18     **B. Declaratory Judgment**

19      The Declaratory Judgment Act proclaims declaratory relief is discretionary.

20  28 U.S.C. § 2201(a); *see, Brillart v. Excess Ins. Co. Of Am.*, 316 U.S. 491, 494 (1942).

21  Declaratory judgment is appropriate "(1) when the judgment will serve a useful purpose

22  in clarifying and settling the legal relations in issue, and (2) when it will terminate and

23  afford relief from the uncertainty, insecurity, and controversy giving rise to the

24  proceeding." *Eureka Federal Sav. and Loan Ass'n*, 873 F.2d at 231 (9th Cir. 1989).

25     "When neither of these results can be accomplished, the court should decline to

26  render the declaration prayed." *Edelbrock LLC v. Genesis Group International (USA),*

27  *Inc.*, 119 F.Supp.3d 1168 (C.D. Cal. Aug. 12, 2015); *citing McGraw-Edison Co. v.*

28  *Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966).

## III.   ARGUMENT

### A. The Court Should Deny Plaintiff's Request For A Permanent Injunction Because Plaintiff Failed To Satisfy The Four-Factor Test.

Plaintiff asks the Court to grant her a permanent injunction by stating Ms. Steinbeck has a "well-documented history of ignoring definitive court decisions, as well as her conduct at trial and her statements to the press thereafter." Plaintiff's Opening Brief in Support of Motion for Permanent Injunction and Declaratory Relief ("Plaintiff's Brief"), Dkt. No. 305, 8:3-4. Plaintiff provides no examples of or citations ro the conduct or statements of which she is speaking. Without providing concrete examples, the Court cannot apply the four-factor test, as doing so would require the Court to scour the evidentiary record, impermissibly search the Internet for statements by Ms. Steinbeck, and then somehow guess whether the Court's findings were what the Plaintiff desired to be used to support her arguments. The Plaintiff may not assign her burden of proof to the Court.

#### 1.  Plaintiff Has Not Suffered Irreparable Harm.

"There is no presumption of irreparable harm warranting a permanent injunction upon the establishment of liability . . . ." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197 (C.D. Cal. 2007).  The burden is therefore upon the Plaintiff to prove ***irreparable*** injury. *Id.* at 1211. If the Court granted the Plaintiff a presumption of irreparable harm, then the burden of proof would shift to Defendants to prove otherwise. *Id.* "Such a rule would contravene the Supreme Court's intent that Plaintiffs establish not merely that [she suffered] harm, but how it amounts to *irreparable harm*." *Id.* (Emphasis added.)

This case is not a copyright infringement case, but even if it was, "Irreparable harm cannot be established solely on the fact of past infringement." *Id.* at 1214. "It must also be true that the mere likelihood of future infringement by a defendant does not by itself allow for an inference of irreparable harm." *Id.* at 1215.

1   "If damages can be calculated, the injury is **not** irreparable . . . ." *Id.* at 1215-1216

2   (Emphasis original).

3   Plaintiff attempts to support her argument for a permanent injunction by merely

4   pointing to Ms. Steinbeck's past conduct. Specifically, Plaintiff cites to emails Ms.

5   Steinbeck wrote years prior to, or statements made in her deposition a year and a half

6   before, the jury reached its verdict. Plaintiff's Brief, 9:15-21. Plaintiff tries to misrepresent

7   Ms. Steinbeck's verbatim answers on cross-examination to mean she was not remorseful

8   or that she would repeat her conduct. *Id.* at 9:19-21. Taking Defendants' explicit

9   statements out of context or applying them to mean something Ms. Steinbeck was not

10  asked at trial is disingenuous and impermissible conduct, to say the least. Plaintiff even

11  tries to use other witness's testimony to anticipate what Ms. Steinbeck would do in the

12  future, in contradiction of case law. *Id.* at 10:8-11. Plaintiff fails to point to a single piece

13  of evidence or testimony that shows an <u>intent</u> by the Defendants to continue their actions

14  that spawned this lawsuit.

15  Plaintiff then accuses Ms. Steinbeck of making "statements to the media . . .

16  claiming that she had rights she would continue to pursue. *Id.* at 10:123-15. As an

17  example, Plaintiff cites a quote by Ms. Steinbeck in *The Hollywood Reporter* that has

18  nothing to do with claiming she had any rights she would pursue. *Id.* at 10:15-21.

19  Defendants are shocked that Plaintiff would insinuate that it was improper for Ms.

20  Steinbeck, or any of the Defendants, to exercise their legal right to file an appeal. An intent

21  to exhaust their legal rights should not be used against the Defendants to determine if

22  irreparable harm exists.

23  At trial, Plaintiff had her expert witness clearly calculate the damages for all three

24  claims. Reporter's Transcript, Day 3, 101:5-13, 101:18-19, 104:6-15. Since damages were

25  **calculable** there can be no finding of irreparable harm.[1]

26

27

28
___
[1] Even if the Court grants Defendants' motion for judgment as a matter of law, new trial and/or remittitur on any or all of the issues, damages were still "calculable". Irreparable harm cannot be found either way.

1   Therefore, the Court should not grant Plaintiff's request for a permanent injunction

2   because she cannot establish she suffered irreparable harm.

3   **2. Plaintiff Received Adequate Remedies at Law**.

4   "The 'irreparable harm' and 'inadequate remedies at law' inquiries are essentially

5   identical." *Columbia Pictures Industries, Inc. v. Fung*, 2013 WL 12098334 *2 , n. 2 (C.D.

6   Cal. Aug. 5, 2013); *citing Metro-Goldwyn-Mayer Studios*, 518 F.Supp.2d at 1219; *see*

7   *also, MerExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp.2d 556, 582 (E.D. Vir. 2007). While

8   this is not technically a copyright case, this legal analysis is apropos.  The inadequate

9   remedies at law analysis focuses "on two basic themes, whether: (1) [Defendant] has and

10  will continue to induce far more infringement than could ever possibly be redressed with

11  damages; and (2) Plaintiff's copyrights (especially those of popular works) have and will

12  be rendered particularly vulnerable to continuing infringement on an enormous scale due

13  to [Defendant's] inducement." *Columbia Pictures,* 2013 WL 12098334 at *2; *quoting*

14  *Metro-Goldwyn-Mayer Studios*, 518 F.Supp.2d at 1217. Neither of these elements are

15  present here.

16  As established above, Plaintiff herself calculated the amount of harm she suffered.

17  Therefore, there can be no irreparable harm. Without irreparable harm, it is impossible for

18  Plaintiff's harm to exceed the legal remedies awarded to her by the jury, especially when

19  **the jury awarded her more than she requested**. Jury Verdict, Dkt. 295.

20  Plaintiff's copyright interests are not vulnerable to continuing infringement,

21  especially not on an enormous scale. The copyrights at issue in *Metro-Goldwyn-Mayer*

22  were infringed by a peer-to-peer file-sharing software on a massive scale. *Metro-Goldwyn-*

23  *Mayer Studios*, *Inc. v. Grokster, Ltd.* ("*Grokster I*"), 454 F.Supp.2d 966, 970 (C.D. Cal.

24  2006). The anonymous system allowed for such massive infringement of Plaintiff's

25  copyrights that the Court could not adequately determine the true extent of the

26  infringement. *Metro-Goldwyn-Mayer*, 518 F.Supp.2d at 1220. Due to the nature of the

27  software it was impossible for the Plaintiff to track and bring suit "against every infringer

28  who continues to illegally reproduce and distribute elsewhere the files originally obtained

1    through [defendant's] inducement." *Id.* The Court found a permanent injunction necessary

2    because the nature of the infringement made remedies at law insufficient to compensate

3    the Plaintiff for the harm caused. *Id.*

4        Dissimilarly here, there are only a few parties, all of whom were identified. No

5    tracking or identification of infringers is required. There are no anonymous third parties

6    illegally downloading or making claims of ownership to or control of the Steinbeck

7    Works. Defendants have no intention to continue the conduct that gave rise to this

8    lawsuit.[2] Without the threat that Plaintiff's copyright interests are vulnerable to future

9    infringement or that her title to the Steinbeck Works would be slandered, the remedies at

10   law, all $13.15 million of them, are beyond adequate to alleviate Plaintiff's harm. The

11   scope of future infringement here is so much smaller than *Metro-Goldwyn-Mayer*, that the

12   two cases are not analogous.

13       Without much support for her argument, Plaintiff relies on misrepresenting Ms.

14   Steinbeck's testimony and, again, improperly shifts her burden onto someone else.

15   Plaintiff leads the Court into the thicket by indirectly referencing the trial record rather

16   than quoting Ms. Steinbeck directly. This leads to ambiguity which Plaintiff seeks to

17   exploit in her favor.  When Plaintiff asked Ms. Steinbeck if she had "a right to be involved

18   in the Steinbeck works," Ms. Steinbeck stated "I do." Reporter's Transcript, Day 1,

19   203:21-24. A belief about one's rights is not the same as expressing intent. Plaintiff chose

20   to change the subject instead of inquiring into Ms. Steinbeck's or the other Defendant's

21

22       [2]   Plaintiff directs this Court to *Century 21 Real Estate Corp. v. Sandlin.* a trademark infringement case, for

23   the proposition that "when intellectual property claims are involved, '[i]njunctive relief is the remedy of choice . . . since there is no adequate remedy at law for the injury caused by a defendant's continuing

24   infringement.'" Plaintiff's Brief, 11:17-20; *quoting Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1180 (9th Cir. 1988). However, *Century 21* is inapposite to this lawsuit. *Century 21* involved a

25   defendant who had no legal interest in plaintiff's intellectual property, but used plaintiff's trademark to promote their similar business. *Century 21*, 846 F.2d at 1180. Injunctive relief was necessary because the

26   defendant had intended to continue using the business name that infringed upon *Century 21*'s trademark in the same business. The difference between these two cases is that the defendant in *Century 21* had the

27   *intent* to continue to use the infringing name; whereas here, Ms. Steinbeck and the other Defendants have zero intent to continue to assert that they have control over the Steinbeck Works. Neither do the

28   Defendants intend to slander Plaintiff's title to the Steinbeck Works, and there is no evidence to the contrary.

intent regarding the Steinbeck Works post-trial. Appropriate follow up questions might have been something along the lines of "in what ways do you believe you have a right to be involved in the Steinbeck Works" and then "will you continue to try and be involved in the control and exploitation of the Steinbeck Works in the future." Yet, Plaintiff chose not to ask these questions or further develop the evidentiary record on this subject.[3]

Plaintiff then tries to transmute her burden of proof by alleging Defendants had the task to prove Plaintiff's harm would not continue to occur in the future. Plaintiff's Brief, 12:15-16 (Ms. Steinbeck "has given no indication of any intention to change this course of action going forward as a result of the jury's verdict"). However, it is Plaintiff's burden, not Defendants, to prove each factor of the four-factor test. *Flexible Lifeline Systems, Inc.,* 654 F.3d at 995; *see, eBay,* 547 U.S. at 338.

Since Plaintiff has failed to satisfy her burden of proof, the Court should deny Plaintiff's request for a permanent injunction.

### 3. Balancing the Hardships Harms the Defendants. Equitable Relief is Unwarranted.

Plaintiff's requested equitable relief should be rejected because balancing the hardships weighs in favor of the Defendants. Plaintiff cites *Metro-Goldwyn-Mayer* as the standard for balancing the hardships. The facts in *Metro-Goldwyn-Mayer* are so substantially different than those in this case, that a different outcome is mandated.

In *Metro-Goldwyn-Mayer*, the Court stated the plaintiff had a "distinct hardship" because the plaintiff's recordings had been downloaded by anonymous users and could "be replicated into infinity, for free . . . ." *Metro-Goldwyn-Mayer*, 518 F.Supp.2d at 1220. No such circumstance is present here. Defendants' conduct has not caused or allowed hundreds or thousands of anonymous individuals to pirate, illegally replicate, and redistribute  the Steinbeck Works. Plaintiff's request here only applies to Defendants.

---

[3]  The Defendants do have a copyright interest in the Steinbeck Works and continue to receive royalties from their exploitation, each of which is "a right to be involved" in those Works.

1   Since Ms. Steinbeck's husband is deceased, and she is the sole owner of The Palladin
2   Group, she is the only person to whom the injunction would apply.

3       The Court in *Metro-Goldwyn-Mayer* also stated that "the existence of past violations
4   *may* give rise to an interference that there will be future violations." *Metro-Goldwyn-*
5   *Mayer*, 518 F.Supp.2d at 1221 (emphasis added); *quoting SEC v. Murphy*, 626 F.2d 633,
6   655 (9th Cir. 1980). The footnote associated with this quote narrows this assumption as
7   only arising from the trial record. *Id.* at n.22.[4]   The Court continues justifying this
8   approach by noting:

9       [S]uch an inference is warranted based upon various undisputed facts:
10      (1) 'overwhelming' evidence of [defendant]'s illegal objective, which resulted
11      in a 'staggering' amount of infringement, *Grokster*, 454 F.Supp.2d at 985, 992;
12      (2) [defendant]'s business model has depended on inducement, *id.* at 988-89,
13      and the company would financially benefit from further infringement based on
14      its continued desire to advertise . . .; (3) [defendant]'s recent efforts to filter
15      admittedly did not commence until after this Court's September 27, 2006 Order
16      granting Plaintiff's motion for summary judgment . . .; and (4) [defendant] has
17      hinted that it may stop filtering its software unless otherwise ordered by this
18      Court. *Id.*

19      To the contrary, the business interests of the parties in this case are aligned. When
20  Plaintiff earns money from the domestic exploitation of the Steinbeck Works, so do
21  Defendants; when exploiting the Steinbeck works, what is in the best interest of the
22  Plaintiff is in the Defendants' best interest, too.

23      There is no comparison between Defendants' conduct and the intentional and
24  staggering amount of infringement as identified in *Metro-Goldwyn-Mayer*. Without
25  analogous conduct, reliance on the holding in *Metro-Goldwyn-Mayer* is inappropriate.

26
27
28  _____

    [4]   Therefore, Ms. Steinbeck's supposed post-trial statements to the media should not be used to consider the likelihood Defendants would claim control of or slander Plaintiff's title to the Steinbeck Works.

1    After this Court clarified its prior-rulings in the Relitigation Order, Dkt. No. 270,

2    Defendants have not claimed control of, slandered Plaintiff's title to, or interfered with the

3    exploitation of the Steinbeck Works. Defendants have also not so much as "hinted" that

4    they would repeat this conduct.   These facts further distance this case from

5    *Metro-Goldwyn-Mayer*.

6    The truth is that the only way for Defendants to pay the unjustifiable $13.15 million

7    judgment against them is to not repeat the conduct that this Court found to have breached

8    the 1983 Agreement, slandered Plaintiff's title, and interfered with the Plaintiff's

9    exploitation of the Steinbeck Works. This gigantic incentive defeats any suggestion that

10   Defendants would repeat the conduct that led to this lawsuit. On the contrary, Plaintiff will

11   suffer no hardship if her requested permanent injunction is denied.

12   On the other side of the scale, Defendants would be burdened if the Court issued the

13   requested injunction. As co-owners of the copyrights to the Steinbeck Works, they are

14   entitled to assert they have an ownership interest in the Steinbeck Works, so long as they

15   do not assert that they control, or that Plaintiff does not control, the Steinbeck Works. The

16   requested permanent injunction would state otherwise, the consequence of which would

17   be great confusion as to what could or could not be said by Defendants in reference to the

18   Steinbeck Works.  Defendants would be forced to walk on eggshells praying to not be sued

19   again for answering a question about their ownership in the Steinbeck Works.   A

20   permanent injunction would require Defendants to censor themselves constituting a *prior*

21   *restraint* of their speech in violation of the First Amendment. This burden greatly

22   outweighs Plaintiff's interests.

23   The Court should deny Plaintiff's request for a permanent injunction since balancing

24   the hardships favors the Defendants.

25       **4.   Issuing Plaintiff's Requested Injunction Would Cause a Great Disservice**

26           **to the Public's Interest**.

27   The Plaintiff has the burden of proving that a permanent injunction would not cause

28   a disservice to the public interest. *eBay*, 547 U.S. at 391. Alarmingly, Plaintiff asks for a

permanent injunction which bars "Defendants from any further interference with Plaintiff's exclusive right to control the exploitation of the Steinbeck Works." Plaintiff's Brief, 16:2-5. As is, Plaintiff's requested permanent injunction causes a great disservice to the public interest for two reasons: (1) precluding speech creates a dangerous precedent since it is a prior restraint on speech in violation of the First Amendment, *Tory*, 544 U.S. at 738, and (2) preventing Defendants from asserting and exercising their legitimate right to file an appeal violates Federal Rules of Appellate Procedure, Rule 4(a)(1)(A).

A prior restraint "on speech and publication [is] the most serious and least tolerable infringement on First Amendment rights." *Pittsburgh Press Co.*, 413 U.S. at 390. "[R]estricting speech should be the government's tool of last resort, the availability of obvious less-restrictive alternatives renders a speech restriction over inclusive." *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 826 (9th Cir. 2013).

Free speech is one of the load-bearing pillar's of American society. Plaintiff's requested permanent injunction would restrict Defendants' speech before it occurred. Issuance of Plaintiff's requested injunction undoubtedly hinders the public's interest in exercising their First Amendment right to free speech by creating this dangerous precedent. The result would have a chilling effect on free speech in our society. For this reason alone, Plaintiff's requested injunction should be denied.

Plaintiff's requested injunction also is so restrictive that it would preclude Defendants from exercising their legitimate right to file an appeal under Federal Rules of Appellate Procedure, Rule 4(a)(1)(A). Precluding Defendants from filing and potentially arguing an appeal to which they are entitled by law would create poor case law which negatively impacts the public's interest. In this nightmare scenario, successful parties could effectively foreclose their opponent's statutory right to file an appeal. Surely, protecting the public's interest here greatly outweighs issuing Plaintiff's requested injunction.

Plaintiff argues that the public interest would be served if the injunction was issued because a plethora of Steinbeck-related films and plays would be created. Plaintiff focuses

her analysis on Defendants' conduct as if it was the only factor for the Plaintiff's agent's failure to sell the rights to a recent television series, a feature film, or a recent play based on the Steinbeck Works. Perhaps purposely, she fails to mention the facts that:

- The prior *East of Eden* film deal with Universal and Imagine Entertainment in the 2000s involved the Defendants. Although an option agreement was signed, Universal chose to not purchase the film rights. Deposition of Gail Knight Steinbeck ("Ms. Steinbeck's Deposition"), 106:19-15, 107:2-12, 111:3-16. Defendants were not a cause for Universal's decision to walk away.

- After Defendants' conduct apparently "spooked" Hollywood from adapting the Steinbeck Works into film or television, James Franco did produce a feature film based on *In Dubious Battle*. Ms. Steinbeck's Deposition, 31: 23-24. The film did not receive mass distribution and flopped at the box office, having nothing to do with the Defendants.

- McIntosh & Otis was approached by Alison Owen, an award winning television producer, about producing a mini-series based on *East of Eden*, but Plaintiff's agent failed to follow up with her inquiry or reach out after the Universal/Imagine *East of Eden* film deal fell apart. Reporter's Transcript, Day 2, 184:9, 185:17-20, 187:13-18.

- Imagine Entertainment was still passionate about producing an *East of Eden* film even after the negotiations with Universal fell apart. *Id.* at 145:15-18. Plaintiff's agent did not try to work with Imagine Entertainment to put another deal together.

- DreamWorks did sign an option agreement to be able to purchase the film rights to *The Grapes of Wrath* which is still in development. Exhibit 184. The film rights have not been purchased, but Defendants' involvement has had no affect on whether the film rights will be purchased; or a film will be produced, distributed, or do well at the box office.

1    • Exhibit E of Plaintiff's expert's report showed the dearth of projects that

2    exploited the Steinbeck Works dating back to 1950s, clearly a failing of the

3    Plaintiff's agents, rather than anything that the Defendants had said or done.

4    In reality, the public has not been deprived of Steinbeck-related productions because

5    of Defendants' conduct. There is no evidence that a permanent injunction would actually

6    result in the production of creative content based on the Steinbeck Works, or that M&O

7    would actually do their job.

8    Surely, protecting the public's First Amendment right to free speech and its statutory

9    right to file an appeal in a civil case greatly outweighs the minuscule likelihood that

10   simply barring Defendants from speaking about the Steinbeck Works will result in more

11   Steinbeck-related productions.

12   Accordingly, the four factor test weighs heavily against issuing a permanent

13   injunction. The Court should deny Plaintiff's requested injunction.

14   **B.   Declaratory Judgment Is Unnecessary Because The Relevant Legal Issue**

15   **Has Already Been Clarified And Settled By This Court And The Jury's**

16   **Verdict. Declaratory Judgment Would Only Create Greater Uncertainty,**

17   **Insecurity, And Controversy Which Gave Rise To This Lawsuit.**

18   Declaratory judgment is appropriate "(1) when the judgment will serve a useful

19   purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate

20   and afford relief from the uncertainty, insecurity, and controversy giving rise to the

21   proceeding." *Eureka Fed. Sav. & Loan Ass'n*, 873 F.2d at 231. "When neither of these

22   results can be accomplished, the court should decline to render the declaration prayed."

23   *Edelbrock*, 119 F.Supp.3d at 1168; *citing McGraw-Edison*, 362 F.2d at 342.

24   Declaratory judgment is unnecessary here because the Court's Partial Summary

25   Judgment and Relitigation Orders clearly stated the 1983 Agreement granted Elaine

26   Steinbeck, and now her estate, the exclusive right to exploit John Steinbeck's literary

27   works. Partial SJ Order, Dkt. No. 150; Relitigation Order, Dkt. No. 270. The trial and the

28   jury's verdict were extensively covered by the media which publicized that Elaine's Estate

has exclusive control over the Steinbeck Works. The New York Times, *Steinbeck's Heir Wins Lawsuit*, Sept. 7, 2017, https://www.nytimes.com/2017/09/07/books/steinbeck-heir-lawsuit.html ("A 1983 settlement directed . . . Elaine would retain full control over the 'exploitation' of [John Steinbeck's] works, including any film and theater adaptions."); The Los Angeles Times, *John Steinbeck's Stepdaughter Wins $13 Million in Lawsuit Over His Literary Estate*, Sept. 7, 2017, http://www.latimes.com/books/jacketcopy/-la-et-jc-steinbeck-lawsuit-20170907-story.html ("We are pleased with the jury's verdict that recognizes [Elaine's] estate's full control over the rights to John Steinbeck's works . . . ."); Variety, *Jury Orders John Steinbeck's Daughter-in-Law to Pay $13 Million in Rights Dispute*, Sept. 5, 2017, http://variety.com/2017/biz/news/-steinbeck-estate-grapes-ofwrathgail-steinbeck-lawsuit-1202548457/ (Ms. "Kaffaga said she was pleased that the verdict 'recognizes [Elaine's] Estate's full control of the rights to John Steinbeck's works"). Hollywood and the public-at-large have already been notified about this Court's rulings over who has exclusive control over the Steinbeck Works. Declaratory judgment here would provide no useful purpose as it will not clarify or settle the already-determined and publicized legal issues.

Additionally, the Court has previously declined to issue declaratory judgment in this case. In its Partial Summary Judgment Order, the Court steered clear of granting Plaintiff's requested declaration stating:

> Nonetheless, the Estate concedes that decisions by the Southern District and the Second Circuit 'left unresolved the narrow question about termination under the 1983 Agreement' and that termination notice with respect to *Of Mice and Men* is 'currently at issue before the Ninth Circuit.' These unresolved issues give this Court pause. Far from 'clarifying and settling the legal relations in issue,' declaring ownership of unresolved intellectual property rights would almost certainly lead to increased 'uncertainty, insecurity, and controversy giving rise to the proceeding.' *Eureka Fed. Sav. & Loan Ass'n*, 873 F.2d at 231. Thus, declaratory relief is not appropriate here. Partial SJ Order, 13:18-28, 14:1.

1    Plaintiff's requested declaration here is only slightly different than their previously

2    requested relief. Nothing has changed since the Partial Summary Judgment Order was

3    filed. Although the Ninth Circuit recently affirmed this Court's separate ruling in

4    *Steinbeck v. Kaffaga et al.*, Defendants still have the opportunity to request an *En Banc*

5    review and one final appeal to the United States Supreme Court on the issue of whether

6    the termination notice to *Of Mice and Men* was a valid exercise of Mr. Steinbeck's and

7    Blake Smyle's ("Ms. Smyle") copyright termination rights. If the Ninth Circuit or the

8    Supreme Court accepts Ms. Steinbeck's appeal and decrees that the termination notice

9    filed by Mr. Steinbeck and Ms. Smyle to *Of Mice and Men* was valid, then Defendants

10   undoubtedly did have *some* control over the Steinbeck Works. Issuing a declaration that

11   Plaintiff has the exclusive power and authority to control the exploitation of the Steinbeck

12   Works prior to Defendants exhausting their appeals to determine the validity of the *Of*

13   *Mice and Men* termination notice would, in this Court's words, "almost certainly lead to

14   increased 'uncertainty, insecurity, and controversy giving rise to the proceeding.'" Partial

15   SJ Order, 13:27-28; *quoting Eureka Fed. Sav. & Loan Ass'n*, 873 F.2d at 231.

16       Accordingly, the Court should once again deny Plaintiff's requested declaratory relief,

17   because the judgment will not serve a useful purpose in clarifying and settling the legal

18   relations at issue and almost certainly will lead to increased uncertainty, insecurity, and

19   controversy that gave rise to this lawsuit.

20   **IV. CONCLUSION**

21       Defendants respectfully request that the Court deny Plaintiff's request for a permanent

22   injunction and declaratory judgment.

23

24   Dated: November 27, 2017          By:  /Matthew I. Berger/

25                                      Matthew I. Berger, *Attorney for Defendants, The*
                                        *Estate of Thomas Steinbeck, The Palladin Group,*
26                                      *Inc., and Gail Knight Steinbeck*

27

28

---